## THE GULF STREAM.

## NEW YORK & W. STEAMSHIP CO. v. INLAND & SEABOARD COASTING CO.

### (Circuit Court of Appeals, Second Circuit. December 3, 1894.)

### No. 12.

COLLISION—DIVISION OF DAMAGES — PURCHASE BY PARTY OF DAMAGE CLAIMS.
On a libel for the loss of a vessel and cargo by collision, if a division of damages is decreed on the ground of mutual fault, the parties stand in the position of sureties towards each other as respects claims of owners of cargo lost by the collision; and where, pending suit, one of the parties has purchased claims of such cargo owners at less than the value of the goods lost, the other is responsible only for his proportion of the amount paid, with interest. 58 Fed. 604, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by the Inland & Seaboard Coasting Company against the steamship Gulf Stream (the New York & Wilmington Steamship Company, claimant) for damages for the loss of libelant's steamship E. C. Knight and her cargo, by collision with the Gulf Stream. The district court found both vessels in fault, and rendered a decree for a division of the damages and costs. 43 Fed. 895. On a reference to compute the damages, exceptions to the commissioner's report were filed by the owner of the Gulf Stream, but were

overruled by the district court. 58 Fed. 604. From the final decree entered thereon, the owner of the Gulf Stream appealed.

Robinson, Biddle & Ward, for appellant.

Frank D. Sturges, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

·WALLACE, Circuit Judge. By this appeal the owner of the steamship Gulf Stream seeks to review so much of the final decree of the court below in favor of the libelant, the owner of the steamship E. C. Knight, as denies to the appellant the benefit of a purchase of certain demands beyond the sum actually paid for the same.

The libel was filed ·to recover the value of the steamship E. C. Knight and her cargo, which were lost through a collision with the steamship Gulf Stream. The owner of the Gulf Stream appeared and answered, denying that the Gulf Stream was in fault, and alleging that the collision was solely caused by the fault of the E. C. Knight. The cause went to a hearing, and the court found that both vessels were in fault for the collision, and decreed in favor of the libelant for half damages. A reference to a commissioner to take proof and report the amount of damages was ordered. Upon that reference, by consent of the parties, B. F. Clyde and Clyde & Co. were permitted to intervene for the protection of their interests. They proved that, acting on behalf of the owner of the Gulf Stream, they had purchased, while the cause was pending and before it had been heard, for the sum of $1,150, the claims of the owners of certain cargo on board the E. C. Knight, lost by the collision, of the actual value of $3,350. The commissioner reported their damages upon the basis of the actual value of the cargo lost, but the court refused to confirm that part of the report, and decreed in their favor, upon the basis of the sums actually paid by them for the claims of the cargo owners, awarding them half damages. The legal theory adopted by the court was that, the purchase being really by the owner of the Gulf Stream, it would be contrary to equity to allow such a purchaser to make a profit out of the transaction. The district judge, in his opinion, said:

"To permit one of the parties, equally answerable, to set up purchased claims for a larger amount than was paid for them, would not only be contrary to the principle and the equity of the moiety rule that each vessel shall bear half the burden, but would sometimes, as in this case, enable one of them to make an actual profit out of the other."

We fully agree with the observations of the learned district judge. The common-law rule by which there is no contribution between wrongdoers is not applied by courts of admiralty in cases of collision caused by the mutual fault of two vessels; but as an incident of the moiety rule, adopted for the better distribution of justice between mutual wrongdoers, by which each side must bear the damage in equal parts, the one suffering least is decreed to pay the other the amount necessary to make them equal,—that is, one-half of the dif-

ference between the respective losses sustained. The Alabama and The Game Cock, 92 U. S. 695; The North Star, 106 U. S. 17, 1 Sup. Ct. 41. It necessarily results that they stand in the position of sureties towards one another as respects the claim of a cargo owner whose goods on board one of the vessels have been lost by the collision. The cargo owner may pursue either wrongdoer, and recover his whole loss from one, notwithstanding, as between themselves, each is primarily liable for half. The one who is thus compelled to pay the whole loss is in effect a surety for the other, to the extent which the latter should contribute. Because the loss is a common burden, the owner of either vessel may remove it, and become entitled to contribution against the other. Courts of admiralty are guided by equitable considerations, and no principle is better settled in equity than that parties who stand in such relations are entitled equally to all the benefits, and must bear equally all the burdens of the position. Like ordinary sureties, one cannot speculate upon the debt, to make a profit from the other; but, if one compromise, the other is entitled to the benefit, and is responsible only for his proportion of the amount actually paid, with interest. Hickman v. Curdy, 7 J. J. Marsh. 555; In re Swan's Estate, 4 Ir. Eq. 209; Wynn v. Brooke, 5 Rawle, 106; Bonney v. Seeley, 2 Wend. 481; Lawrence v. Blow, 2 Leigh, 30.

The decree is affirmed, with costs.