Argument for the appellant.

No. 2458.

## W. D. CLEVELAND *v.* J. W. TUFTS.

1. JURISDICTION — TRIAL OF RIGHT OF PROPERTY.—The assessment of value placed on property by the officer who seizes it under attachment should determine the jurisdiction on the trial of the right of property, and not its value as subsequently ascertained on trial.

2. SAME.—When a cause is removed to the district court from the county court on account of the disqualification of the county judge, the original jurisdiction of the district court immediately attaches and the cause proceeds to trial as if originally instituted there. Such jurisdiction is original, and it is immaterial whether the county court's jurisdiction had properly attached or not.

3. PRACTICE AMENDMENT.—A claimant in an action for the trial of the right of property may amend as in any other action, and claim such damages as he may have sustained from the illegal seizure of his property. The right to amend is confined to no particular class of actions.

4. RIGHT OF ACTION.—Money paid upon a judgment, afterwards reversed, may be recovered by the party who made the payment, if the payment was made to prevent the sale of the defendant's property under execution. It will not be considered voluntary, and the judgment, on reversal, will be treated as though it had never existed.

5. SAME.—When the plaintiff has purchased at execution sale, and the judgment is afterwards reversed, the defendant may recover from him the property itself, or, if it has been alienated, its value. If, however, the purchase was made by a third party, his right and possession will not be disturbed, but the defendant must look to the plaintiff, who caused the seizure and sale, for reimbursement.

6. MEASURE OF DAMAGES.—Authorities bearing upon the subject cited and the doctrine announced, that when such a sale is made and the judgment authorizing it is reversed, the measure of defendant's damages is not what the property realized at forced sale, but its full value, and this though the property had been surrendered under a judgment which required the claimant to pay the demand or surrender the property. It was not necessary for the claimant to protest or give notice of appeal at or before the delivery of the property.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

*J. T. Swearingen,* for appellant: The cause originating in the county court, the jurisdiction of the district court in the trial of the cause was limited by the jurisdiction of the court *a quo* (Boudon v. Gilbert, 67 Texas, 689; Bradley v. Love, 60 Texas, 472; Horan v. Wahrenberger, 9 Texas, 313.)

Opinion of the court.

The purpose of the claimant to treat the judgment of March 27, and its discharge by him on the fourth of April following as a final settlement of the contest, unless the decision of the Supreme Court in some other case of which Cleveland had no notice, should be such as to make it to his interest to regard it as otherwise, could not change the effect of his action in satisfying said judgment, and reopen a cause thus terminated. (Rev. Stats., art. 4845; Fly v. Bailey, 36 Texas, 119; Ladd v. Southern Cotton Press, 53 Texas, 192; Cahaba v. Burnett, 43 Alabama, 400; Buchnall v. Storey, 46 California, 589; Id., 3 Am. Rep., 220; Elston v. Chicago, 40 Illinois, 514; Benson v. Monroe, 7 Cush., 125; Legoneir v. Ackerman, 15 Am. Rep., 333; Marmott v. Hampton, 2 Smith's Leading Cases, 453; 4 Wait's Actions and Defenses, 476, 478; Jefferson County v. Hawkins, Southern Reporter, July 6, 1887, page 362; Freeman on Judgments, sec. 466; United States v. Dashiel, 3 Wall., 688.)

The court erred in holding, on special exception, that this action for damages could be maintained in this statutory proceedings for the trial of the right to property. (Rev. Stat., art. 4847; Moore v. Gammell, 13 Texas, 120; Carter v. Carter, 36 Texas, 693; Vickers v. Ward, 2 Texas, 212.)

*Bassett, Muse & Muse,* for appellee.

WILLIE, CHIEF JUSTICE. This was a statutory proceeding to try the right of property in a soda fount and fixtures levied on under attachment sued out by the appellant against Frank Chase, and which were claimed by the appellee, who made affidavit and gave bond as required by law. In the bond, as well as in the indorsement made by the sheriff thereon, the property was valued at four hundred dollars, and the bond, together with the affidavit, was returned by the sheriff into the county court of Washington county for a trial of the cause. The judge of that court was disqualified to sit in the case, and it was transferred to the district court of Washington county. A trial in that court resulted in a judgment in favor of the appellant that the property was subject to the attachment, and its value was fixed at six hundred and twenty-eight dollars. Appellant also recovered sixty-two dollars and eighty cents damages and all costs of suit. The judgment directed that it might be satisfied by a return within ten days of the property and the payment of damages and costs and the sum of sixty

dollars for detaining the property; otherwise execution was to issue in favor of the plaintiff against the claimant and his sureties for the amount adjudged, and against the plaintiff alone for the costs of suit. Before the expiration of the ten days the claimant returned the property to the sheriff, paid the damages, costs, etc., as required, and the sheriff received them and sold the property at execution sale. It was purchased for two hundred and fifteen dollars, of which fifteen dollars went to pay costs and two hundred dollars was paid over to the appellant. Subsequently the appellee brought the case by writ of error to this court, and the judgment was reversed and the cause remanded for a new trial. When it reached the district court the appellee amended his pleadings and claimed damages to the extent of the value of the property, and the damages and costs paid by him, and upon trial before a jury recovered a judgment for six hundred and sixty-five dollars, the assessed value of the property, the damages and costs of the district and Supreme Court paid by him, and interest, all aggregating the sum of one thousand and seventy-eight dollars and fifty-eight cents. The appellee subsequently remitted all above one thousand and forty-two dollars and ninety cents of the sum recovered, and took judgment for that amount. And from this judgment the present appeal is taken.

It was objected below and is urged here that the district court had no jurisdiction of the cause, for the reason that the value of the property in controversy was over five hundred dollars, and the county court, from which the case was removed, could not take cognizance of it. The statute provides that if the assessed value of the property claimed shall be over two hundred dollars and less than five hundred dollars, the case shall be tried in the county court (Revised Statutes, article 4831); and it further provides that the assessment shall be made by the officer levying the writ. (Id., 4823.) There is in the statement of fact what purports to be a valuation made by the sheriff on the writ of attachment, which is greater than five hundred dollars; but this does not seem to be signed by that officer, and the date when it was made does not clearly appear. If it did, we think the valuation indorsed on the bond, and upon which the sheriff acted in receiving it, is the best evidence of the amount at which he assessed the property. His assessment, too, and not the subsequently proven value of the goods should determine the jurisdiction, at least where no fraud has been attempted—

for it is better that the jurisdiction of the court should be defi-
nitely determined before the trial, than to have the rights of par-
ties endangered by the uncertainty of the opinions of witnesses
sworn in the cause.   But this court has already held that where
a cause is removed from a county to a district court because of
the disqualification of the county judge, the original jurisdic-
tion of the district court immediately attaches, and the case
proceeds in all respects as if originally instituted there.   Such
jurisdiction is original and not appellate, and it matters not
whether or not the county court had cognizance of the cause,
so it falls within the original jurisdiction of the district court.
The case is entirely different from that where a suit reaches
the district court by appeal from another tribunal.   (Smith v.
Harden, 68 Texas, 120.)   The objection to the jurisdiction was
not well taken.

It is further objected that the appellee could not so amend his
pleadings as to claim in this action the damages he recovered
below.   That such an amendment is not proper in an action for
the trial of the right of property.   The right to amend in our
practice is not confined to any particular character of actions.
The settlement in one suit of all controversies growing out of
the subject matter in dispute is always encouraged.   The claim-
ant had a right to damages growing out of the illegal seizure
of his property.   This cause of action was germain to the sub-
ject matter of the controversy, and there was no necessity for
subjecting the parties to the costs and trouble of another action
to remedy a wrong inflicted by the institution of the suit
then before the court.   It was said in Peticolas v. Carpenter, 53
Texas, 29, that whatever relief a party is entitled to on reversal
of judgment may be granted in the same case without resorting
to a new suit; which is decisive of the point under discussion.
The objection is not well taken.

The important question in the case is as to the amount of
damages the appellee was entitled to recover.   It is settled that
money paid upon a judgment afterward reversed may be recov-
ered by the party making the payment.   (Clark v. Pinney, 6
Cowen, 297; Williams v. Simmons, 22 Ala., 425; 13 S. & R., 292;
24 Wendell, 32.)

The payment being made to prevent the sale of the defend-
ant's property under execution is not considered voluntary,
though the judgment was erroneous, and upon reversal, is
treated as if it had never existed.   (Bank of United States v.

Bank of Arlington, 6 Peters, 8.) Upon such reversal the defendant must be placed in the same position he occupied before the judgment was entered. To restore him to this position, the money he has paid must be returned to him with interest, and if his property has been taken he can recover it, unless the rights of third parties entitled to protection have intervened. (Stroud v. Casey, 25 Texas, 740.)

It is pretty well settled that when the plaintiff has purchased at the sale, upon reversal the defendant may recover from him the property itself, or its value if it has been alienated (Freeman on Judgments, sec. 482; McJilton v. Son, 13 Ill., 495); and it is equally well settled that a purchase by third parties will not be disturbed, but the defendant must look to the plaintiff, who caused the seizure and sale of his property, for redress. As to the measure of this redress there is some conflict of authority. Quite a number of courts hold that the recovery is limited to the amount the property brought at execution sale. (38 N. H., 171; 51 Me., 154.) It is held by others that the defendant may recover the full value of the property sold. (Thompson v. Mahan, 1 N. J., Law, 159; .Grayson v. Lilly, 77 B. Monroe, 6.) This is the law as announced by an eminent text writer, and seems to be supported by sound principles. (1 Suth. on Dam., p. 831.) Nothing less than this will restore the defendant to his condition before the seizure occurred. He was then in possession of the property, or enjoying the benefits of its ownership. It was worth to him, not what it would bring at forced sale under the sheriff's hammer, for then it might, and ordinarily would, sell for much less than its value, but it was worth to him at least what it would bring at private sale, as he could convert it into money for that amount. The judgment does not protect the plaintiff in converting the defendant's property to his own use. He must account to the full extent of the injury he has inflicted, not for the amount merely that he or his agents have reaped as the fruits of their illegal act, or the sum at which this act has caused the property to be sacrificed.

The principle upon which the cases holding a different view proceed, seems to be that the plaintiff should have paid off the judgment and prevented a sacrifice of his property. (Gay v. Smith, 38 New Hampshire, 178.)

It would certainly be wrong to require a defendant to satisfy an entire judgment to prevent the seizure and sale of property not worth more than a small portion of the recovery; or to force

his property upon the market at a sacrifice to raise money to pay the illegal judgment, when upon its reversal he can receive no more than the amount thus raised and paid over for the benefit of the plaintiff. The money paid is exacted of him through process of the law, either used or threatened, and it is no part of his duty to reduce the losses of the wrong done by an increase of his own.

The doctrine announced is peculiarly applicable to the present case. Here the property of Tufts was seized by the appellant to satisfy the debt of a third party. He was driven to the alternative of yielding up possession immediately and having it sold for this debt, or to giving a bond with security, thus to surrender it after judgment against him, in order to retain possession. He chose the latter course. An improper judgment was rendered, subjecting his property to another's debt. The property, under the conditions of the bond and the provisions of the judgment, had to be surrendered to the sheriff in ten days, or its value would be collected by an execution to be issued immediately thereafter. The claimant surrendered the property, under the rigid requirements of the law, based upon a judgment which was illegally rendered against him, as was afterwards determined by this court. He was not bound to prosecute an appeal on a writ of error until after the time expired for the enforcement of the judgment; and the plaintiff enforced it at the peril of having to respond in damages if the judgment should be set aside by the Supreme Court. It was not necessary for the appellee to protest or give notice of his intention to appeal it, at or before the delivery of the property. The appellant was charged with notice that he might do so, and, so far as the latter was concerned, an obligation to refund was created at the very time of the surrender. The appellant, in our view, was entitled to at least as much protection as an execution debtor, whose property is about to be seized to pay a debt claimed to be due from himself. (Bank of United States v. Bank of Arlington, 6 Peters, 19.) He was therefore entitled, upon the reversal of the judgment to be restored to the position he occupied before he complied with the requirements of the bad judgment, and that, in order to make him whole, he should have recovered, as he did in the court below, the value of the soda fount and fixtures, in the state they were when returned to the sheriff, as well as the damages and costs paid by him together, with interest. We are not prepared to say that the court was cor-

rect in charging the jury that the sheriff's acceptance of the property conclusively established that it was in as good condition when surrendered by Tuft as it was when delivered to him. If this was error, however, it was harmless, as the presumption arising from the acceptance was that the property was in such condition, and there was no proof showing that it was not. It was shown that it was subject to become deteriorated, but not that it had actually suffered any damage whilst in the possession of the appellee. It was further shown that the property on the day of its delivery to the sheriff by Tuft was worth the amount received as its value by the appellee, and there was no witness who put its value at less. It was unimportant that it had deteriorated, if the appellee received no more than it was worth in its damaged condition. We find no error in the record requiring a reversal of the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered January 31, 1888.